UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

TAMRAL GUZMAN,                              )
                                           )
                    Petitioner,            )
                                           )
v.                                         )    Nos.:  3:10-CR-161-TAV-DCP
                                           )           3:15-CV-57
UNITED STATES OF AMERICA,                  )
                                           )
                    Respondent.            )

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 [Doc. 303] and her reply to the Response of the United States [Doc. 324].[1] During pendency of the action, Petitioner filed an Addendum [Doc. 325] alleging a new claim that a 2011 Tennessee law creating a regulatory scheme for pain management clinics caused her federal conviction to violate the Ex Post Facto Clause[2] and a Motion to Amend her § 2255 petition asserting new purported claims based on *Luis v. United States*, 136 S. Ct. 1083 (2016) [Doc. 329]. The United States ("Government") responded in opposition to the original petition [Doc. 320] and proposed amendment [Doc. 337].[3]

## I.      BACKGROUND

In December 2010, a federal grand jury returned an indictment against Petitioner Tamral Guzman ("Petitioner") [Doc. 3]. Ultimately, Petitioner was charged in a Third

---

[1] All citations to the record are found on the docket of case no. 3:10-CR-161-TAV-DCP.

[2] U.S. Const. art. 1, § 10, cl. 1.

[3] While not filing a separate formal response to Petitioner's Addendum [Doc. 325], the Government did address the claim raised in the Addendum by arguing the claim was both untimely and irrelevant in its Response to Petitioner's Motion to Amend Petition Filed Pursuant to 28 U.S.C. § 2255 [Doc. 337 p. 3].

Superseding Indictment with fifty-seven felony counts arising from the operation of an illicit pain management clinic, including conspiracy to distribute controlled substances, including oxycodone, hydrocodone, and others, in violation of 21 U.S.C. § 846, possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(2), money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(ii), and structuring, in violation of 31 U.S.C. §§ 5323(a)(3) and 5324(d)(2) [Doc. 103]. Attorney Michael Menefee was appointed by the Court to represent Petitioner, and his representation continued through the trial and appellate proceedings [Doc. 17]. Petitioner's case proceeded to a jury trial in September 2012, and the jury convicted Petitioner as charged [Doc. 259 pp. 1–2].

Petitioner was sentenced to an aggregate term of 240 months' imprisonment for the primary offenses [Doc. 259 pp. 2–3]. In addition, Petitioner was sentenced to another eighteen months, to be served consecutively [Doc. 259 pp. 1–3], for absconding before the last day of trial. She was apprehended in Florida on October 31, 2012 [Doc. 233-5 p. 1]. Petitioner entered a guilty plea to the charge of willful failure to appear in violation of 18 U.S.C. § 3146(a)(1) pursuant to a signed plea agreement in Case No. 3:12-CR-0153.[4]

Sentencing in both cases was set on April 18, 2013. Just prior to sentencing, on April 17, 2013, Petitioner filed a Motion for a Judgment of Acquittal or in the Alternative Motion for New Trial [Doc. 257]. Petitioner asserted several grounds for relief, including the presence of errors during the course of trial requiring acquittal and/or a new trial and the discovery of

---

[4] Case No. 3:12-CR-0153 [Doc. 27].

new material evidence warranting a new trial. Judgment was entered on April 29, 2013 [Doc. 259], and by order entered August 5, 2013, the Court denied Petitioner's Motion for a Judgment of Acquittal or in the Alternative for New Trial [Doc. 275]. Petitioner filed a Notice of Appeal on August 7, 2013 [Doc. 276], and the Court of Appeals for the Sixth Circuit affirmed the conviction on July 2, 2014 [Doc. 299]. Petitioner's original § 2255 motion was timely filed on February 2, 2015 [Doc. 303]. However, as addressed later in this opinion, Petitioner's Addendum to her § 2255 motion [Doc. 325], filed on October 22, 2015, and Plaintiff's Motion to Amend [Doc. 329], filed on April 11, 2016, both raising new claims, were filed beyond the applicable one-year statute of limitations.

## II.    STANDARD OF REVIEW AND ANALYSIS OF ORIGINAL § 2255 MOTION

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief under § 2255, a petitioner must establish "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire process invalid." *Short v. United States,* 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted). In other words, petitioner cannot prevail absent a showing of "a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citation omitted). Under this standard, a petitioner "must clear a significantly higher hurdle [to obtain relief] than would exist on direct appeal." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Petitioner raises nine grounds for relief in her original § 2255 motion. She states these grounds as follows:

1. Ground One—Ineffective assistance of counsel by failure to investigate (a) the motivations of her coconspirator, Maimoune Wright ("Wright"), (b) the reasons for the Government's seizure of only 59 files from Maryville Pain Management, LLC ("MPM"), (c) the role of Melvin Viney ("Viney") in discharging 600 patients in 90 days and the basis for Viney's discharge decisions, and (d) the legitimacy of the conspiracy charges, since no other co-conspirator was convicted [Doc. 303 p. 4].

2. Ground Two—Ineffective assistance of counsel by failure to raise challenges to (a) her conspiracy conviction in absence of a conviction of her co-defendant Wright and (b) "the variance in Count Two between the indictment and evidence presented at trial" [Doc. 303 p.5].

3. Ground Three—Ineffective assistance of counsel by failure to (a) file pre-trial motions [Doc. 303 pp. 6–7], (b) call witnesses [*Id.*], and (c) submit a timely motion for a new trial [Doc. 303-1 p. 41].

4. Ground Four—Ineffective assistance of counsel by failure to challenge the number of files reviewed, drug quantities and "relevant conduct" [Doc. 303 p. 8].

5. Ground Five—Sufficiency of evidence for convictions on Counts One and Two [Doc. 303 pp. 9–10].

6. Ground Six—Sufficiency of evidence for money laundering and money structuring counts [Doc. 303 p. 10].

7. Ground Seven—Error of Court in applying the leadership enhancement in determining her sentence [Doc. 303 p. 11].

8. Ground Eight—Error of Court in the calculation of drug computation for purposes of establishing forfeiture amount [Doc. 303 p. 12].

9. Ground Nine—A violation of the Ex Post Facto Clause claiming that the 2009 Sentencing Guidelines, which were in effect at the time the crimes were committed, should have been used instead of the 2012 Sentencing Guidelines in effect at the time of her sentencing and ineffective assistance of counsel in failing to raise this challenge [Doc. 303 p. 13].

These nine grounds can be categorized under three general grounds of collateral attack: ineffective assistance of counsel, sufficiency of evidence, and trial court errors.

### A.    Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance of counsel must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687 (1987); *see also Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013).   First, petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise.  *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy") (internal citation omitted).

Second, petitioner must demonstrate prejudice, which means that "there is a reasonable probability that, but for [counsel's acts or omissions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner articulates three theories of ineffective assistance, including counsel's alleged failure to: (1) investigate possible defenses; (2) file pretrial motions or call witnesses; and (3) file a timely motion for new trial, challenge the variance between the indictment and the proof, and challenge the conspiracy conviction in the absence of a co-defendant's conviction. Petitioner also raises interlinked claims of ineffective assistance of counsel in failure to challenge purported errors by the Court during sentencing, including the calculation of drug quantities, application of the leadership role enhancement, forfeiture amounts, and use of the 2012 Sentencing Guidelines. These entwined issues will be addressed in Section II.C. below.

### 1.    Investigation of Possible Defenses

Petitioner sets forth four claims of ineffective assistance of counsel with regard to failure to investigate possible defenses, including (a) the motivations of her coconspirator, Maimoune Wright ("Wright") [Doc. 303 p. 4]; (b) the reasons for the Government's seizure of only fifty-nine files from Maryville Pain Management, LLC ("MPM") [*Id*.] and the basis of the file identification and selection criteria for the MPM files [*Id*. at 8; Doc. 303-1 pp. 42–54]; (c) the role of Melvin Viney ("Viney") in discharging 600 patients in ninety days and the basis for Viney's discharge decisions; and (d) the legitimacy of the conspiracy charges, since no other coconspirator was convicted [Doc. 303 p. 4].  While she argues that her attorney should have further investigated each of these matters, Petitioner offers only unsubstantiated assertions regarding what her attorney investigated or failed to investigate and no proof of a reasonable probability that, but for the attorney's acts or omissions, the outcome of the trial would have been different.

Petitioner generally asserts that the "major category" that should have been challenged by counsel was the role played by Wright [Doc. 303-1 p. 28], but she fails to state what difference a further challenge or investigation would have revealed other than Petitioner's belief that Wright was intending to start another pain management clinic.  *Id*.  In response to Petitioner's assertion, the Government argues that the proof at trial demonstrated that Petitioner and Wright conspired to distribute controlled substances, which rendered Wright's underlying motivations of starting her own pain clinic to steal Petitioner's customers, even if proven, irrelevant and of no impact upon Petitioner's guilt or innocence [Doc. 320 p. 15].  Petitioner's charge that counsel failed to challenge Wright's role is completely conclusory and

not supported by any factual allegation or analysis to show how further investigation would have been favorable to her or relevant to her defense.

Petitioner next argues that her counsel should have investigated the reason for the Government's seizure of only fifty-nine MPM files. She states that "only 59 files out of nearly 2000 were selected by the government and the law enforcement officers seized those 59 files based on specific names" [Doc. 303-1 p. 29]. While Petitioner maintains that this allegation presents an "important question," she fails to explain the basis for this assertion. *Id.* In response, the Government states that Petitioner's speculation that there must have been some underlying reason for the Government's seizure of only fifty-nine MPM files, which her attorney should have investigated, is without basis. The Government notes that Joni Seratt, a former Fifth Judicial Drug Task Officer who was involved in the investigation, testified at trial that the search warrant executed at MPM only authorized the seizure of those specific files as they related to reports regarding MPM while it was in operation and witness statements that were made during the course of the investigation [Doc. 320 p. 16].[5] Petitioner offers no proof of a reasonable probability that different or additional files would have offered any exculpatory evidence on Petitioner's behalf at trial.

Related to this point, Petitioner argues that her attorney provided ineffective assistance in that he "did not pursue determination of the basis on which files were identified by the government and the selection criteria utilized" [Docs. 303 p. 8; 303-1 pp. 42–54]. Petitioner claims that the "defense attorney was responsible for investigating this information, but failed

---

[5] The Government notes that the remaining files remained in the custody of Petitioner and that she could have used them in her defense as she deemed appropriate [Doc. 320 p. 16].

to do so" [Doc. 303-1 p. 51]. She asserts that based upon this lack of investigation, her attorney was not "prepared effectively . . . to refute the spreadsheets and drug quantity used in sentencing" [Doc. 303 p. 8]. As discussed above, the search warrant executed at MPM did not permit the seizure of all customer files, but only those for certain customers identified through the course of the investigation. This formed the basis for the file selection, and as pointed out by the Government, there was nothing else in terms of "selection criteria" [Doc. 320 p. 22]. Although Petitioner argues that "the number of files used for the creation of the government spreadsheet were [sic] not representative of the total number of clinic files" [Doc. 303 p. 8], she fails to identify any additional files that might have demonstrated the legitimacy of MPM and negated the evidence of her claim. Here, Petitioner's contentions amount to factually void speculation, and speculation is insufficient to support her claim of ineffective assistance of counsel.

With regard to Petitioner's argument concerning her attorney's alleged failure to investigate Viney, Petitioner offers only questions that she thinks could have been directed to Viney, but no proof that the answers would have had any bearing upon the determination of her guilt [Docs. 303 p. 4; 303-1 p. 29]. For example, Petitioner claims that her attorney should have explored why Viney discharged 600 patients within a ninety-day period. In response, the Government relates that Viney's trial testimony revealed that the basis for his discharging patients during his first ninety days at MPM was because he learned that Petitioner had no license or medical training and had been seeing patients, so he immediately began discharging those patients to whom Petitioner had been unlawfully prescribing pills [Doc. 320 p. 16]. Other than raising general questions concerning Viney, Petitioner has produced no evidence

indicating what could have been learned from further investigation and supported with anticipated testimony that ultimately would have changed the outcome.

Finally, Petitioner poses the question, "How could the defendant be singularly convicted of conspiracy, without any co-conspirators also being convicted?" [Doc. 303-1 p. 29]. She claims that her counsel was ineffective in investigating the legitimacy of the conspiracy charges brought against her when no coconspirator (Wright) was convicted. In response, the Government points out that Petitioner's arguments are premised upon an incorrect understanding of conspiracy law. Under federal conspiracy law, even "if charges are never brought against other coconspirators, if charges are dismissed against all other coconspirators, or if a coconspirator has not yet been tried, dismissal of charges against the remaining coconspirator is not required" [Doc. 320 p. 18 (quoting *United States v. Sachs*, 801 F.2d 839, 845 (6th Cir. 1986))]. In this regard, Petitioner fails to identify how the outcome would have been different if counsel had challenged the conspiracy charges on the ground that no coconspirator was convicted. With there being no requirement that coconspirator Wright (who died before her case could go to trial) be convicted in order for Petitioner to be convicted of conspiracy, it would have been frivolous for counsel to have pursued Petitioner's claim, and thus counsel's actions would not constitute ineffective assistance of counsel. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

"The focus in failure-to-investigate claims . . . is the reasonableness of [counsel's] investigation (or lack thereof)." *English v. Romanowski,* 602 F.3d 714, 726 (6th Cir. 2010). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary." *Strickland,* 466 U.S. at 690–91. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 691.

The Court finds that Petitioner's claims of ineffective assistance of counsel for failure to investigate Wright's motives, the reason for the Government's seizure of only fifty-nine MPM files, the role of Viney in discharging patients and the basis for his discharge decisions, and the legitimacy of the conspiracy charges to be without merit. There is nothing in the record to suggest that counsel's investigation was deficient in any manner, especially in light of the highly deferential standard of *Strickland,* and nothing to establish that additional investigation of any kind would have yielded any arguable defense in this case.

In addition, Petitioner cannot meet the second prong of the *Strickland* test. To meet the second prong, Petitioner must show prejudice, i.e., that the outcome would have been different but for counsel's ineffective assistance. Even if counsel's performance was deficient, relief will not be granted unless petitioner was actually prejudiced. *Harbison v. Bell,* 408 F.3d 823, 830 (6th Cir. 2005), *cert. denied* 547 U.S. 1101 (2006). Bare allegations of prejudice are not sufficient; the petitioner must produce enough evidence to demonstrate a reasonable probability that the outcome would have been different. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Petitioner does not identify what, if anything, could have been learned from further investigation by counsel. Without such information, which Petitioner must produce, the Court cannot conclude that counsel could have learned anything which would have

changed the outcome. Accordingly, the claims of ineffective assistance of counsel for failure to investigate on these grounds lack merit, and the Court finds that Petitioner has failed under both prongs of *Strickland.*

### 2. Failure to File Pretrial Motions or Call Witnesses

Additionally, Petitioner claims ineffective assistance of counsel for failure to file pretrial motions and to call certain witnesses [Doc. 303 pp. 6–7]. With respect to Petitioner's claim regarding pretrial motions, she states that her counsel "failed to file pretrial motions even though he attended the evidentiary hearing for the co-defendant and saw the benefit of doing so." *Id.* In reply, the Government points out that her attorney did, in fact, file at least one such motion on her behalf [Doc. 320 p. 19; *see* Doc. 34]. Petitioner cites several pretrial motions filed by Wright's counsel [Doc. 303-1 p. 39], but fails to specify which of these motions, if any, should have been filed or joined by counsel on her behalf. Further, even if she were able to identify any such motion, Petitioner is not able to show prejudice because, as the Government notes, all of the referenced motions filed by Wright's counsel were denied, or at least denied in part.[6] In giving proper deference to trial counsel, it is presumed "that defense counsel has rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy." *Austin v. Bell,* 126 F.3d 843, 848 (6th Cir. 1997). "Trial strategy includes

---

[6] *See* Memorandum and Order [Doc. 138] granting and denying in part Motion for Production of Favorable Evidence and Motion for Rule 16 discovery as to Maimoune Wright [Docs. 75, 76] and denying Defendant's Objection to Release of Protective Order and Motion to Preserve Patient Records and Provide Defendant Wright Access Thereto [Doc. 114] and Memorandum and Order [Doc. 200] denying Wright's Amended Motion to Dismiss for Duplicity and to Strike Surplussage in Second Superseding Indictment, Motion to Dismiss for Preindictment Delay and Failure to Preserve Evidence, and Motion to Dismiss for Selective Prosecution [Docs. 69, 71, and 73, respectively].

the decision not to file certain motions if, after investigation, doing so would not be necessary or advantageous." *Id.* Absent Petitioner's identification of a specific pretrial motion that her counsel should have filed that reasonably would have resulted in a different verdict, Petitioner's claim must fail.

Similar to the decision of whether to file certain motions, defense counsel's decision as to whether to call certain witnesses is likewise a part of trial strategy. The Sixth Circuit has held that the decision whether to call a witness is "generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel." *Sumatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007). Failure to call a witness is presumed to be a matter of trial strategy and constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwideen v. Capture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Further, a defense is substantial if it might have made a difference in the outcome of the trial. *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 693–96).

Petitioner asserts that Todd Gibson should have been called as a witness to testify "to the number of times the defendant had tried to reach him, and what her concern was when she did not make contact" [Doc. 303-1 p. 40]. Petitioner claims this testimony may have "verified her request for assistance in returning the drugs ordered for the dispensary" [Doc. 303 p. 7]. This claim is purely speculative, and Petitioner provides no statement or affidavit from Gibson, so the exact nature of his purported testimony is unknown. Likewise, Petitioner makes unsubstantiated allegations concerning purported testimony of three MPM customers who

were not called to testify. Petitioner maintains that they were "satisfied customers of MPM and would have been able to testify to how thoroughly they had been examined and what forms and procedure had been required of them" [Doc. 303-1 p. 40], but she fails to identify the witnesses by name and provide any proof that would verify or substantiate her claims as to the exact nature of their testimony.

Not only has Petitioner failed to provide the substance of any testimony one of the uncalled witnesses would have given, she has also not shown how the outcome of her trial would have been impacted. A court does not have to first decide whether there was any deficiency in counsel's performance before examining whether any prejudice was suffered by a defendant. *Strickland,* 466 U.S. at 697. Here, Plaintiff has made no showing of prejudice, which is fatal to her claim. Accordingly, Petitioner's claims of ineffective assistance of counsel for failure to call these potential witnesses lacks merit.

### 3. Failure to File Timely Motion for New Trial, to Challenge Variance Between Indictment and Proof, and to Challenge Conspiracy Conviction in Absence of Codefendant Conviction

Petitioner next faults counsel for failing to submit a timely motion for new trial [Doc. 303-1 p. 41], to challenge a variance between the indictment and the proof [Doc. 303 p. 5], and to challenge the conspiracy conviction in absence of a codefendant conviction [*Id.*].

First, Petitioner claims that her counsel was ineffective for not filing a motion for new trial within the time limit for doing so. Petitioner's Motion for a Judgment of Acquittal or in the Alternative Motion for New Trial [Doc. 257] was filed on April 17, 2013. Petitioner was found guilty as to Counts One through Fifty-Seven of the Third Superseding Indictment on October 4, 2012 [Doc. 22]. Under the fourteen-day period set forth in Federal Rules of

14

Criminal Procedure 29(c) and 33(b)(2), and using the general rules of computing time as set forth in Rule 45, the time for the filing of a motion under either rule expired on October 18, 2012. Petitioner's motion was denied by order entered on August 5, 2013 [Doc. 275]. While Petitioner is correct in noting that the motion was not filed within the required period, the Court notes that the time period during which it would have been timely was when Petitioner had absconded[7] and before she was apprehended in Florida on October 31, 2012.[8] Petitioner maintains, "When the defendant absconded from the trial, it was unclear when she would return to Tennessee, but to protect her right to a new trial, the defense attorney was required to file a Rule 29(c) motion within fourteen days of her guilty verdict" [Doc. 303-1 p. 41].

Under the *Strickland* test, Petitioner must show that but for the ineffective assistance of counsel there is a reasonable probability that the Motion for a Judgment of Acquittal or in the Alternative Motion for New Trial would have been granted in order to establish prejudice. In this regard, it is noted that the Petitioner's request for a new trial on the basis of newly discovered evidence under Rule 33 (timely filed within 3 years after the verdict), was fully considered and denied as being without merit [Doc. 275]. Further, Petitioner's motion for a new trial based on alleged *Brady* violations by the government was reviewed de novo by the Sixth Circuit Court of Appeals, and it was determined that Petitioner had not identified a *Brady* violation or resultant miscarriage of justice. *United States v. Guzman,* 571 F. App'x 356 (6th Cir. 2014). At least to these claims, Petitioner cannot make the required showing of prejudice,

---

[7] Bench Warrant Issued as to Petitioner on October 2, 2012, for failure to appear [Doc. 217].

[8] Petitioner was arrested in Florida on October 31, 2012 [Doc. 233-5 p. 1].

and she fails to articulate any other bases for a new trial that could have been included in a timely motion and changed the outcome of the proceeding. Thus, absent a showing of compelling prejudice, Petitioner cannot establish that her counsel was ineffective based on this challenged action.

Second, Petitioner claims that her counsel failed to "challenge the variance in Count Two between the indictment and evidence presented at trial" [Doc. 303 p. 5] and/or failed to "properly preserve the issue of there being a constructive amendment or prejudicial variance . . . for Counts One and Two" [Doc 303-1 p. 26]. In response, the Government states that there was no variance. [Doc. 320 pp. 18–19]. The Government points out that Count Two of the indictment [Doc. 103][9] charged possession with intent to distribute controlled substances and that the Government introduced evidence that Petitioner unlawfully maintained "a significant stash of prescription narcotics at MPM, which Guzman plainly procured and kept with the intent of distributing" [Doc. 320 p. 19].

The Court notes that this issue was also raised and considered on direct appeal. *Id.* Thus, the record belies Petitioner's argument that counsel failed to challenge her conspiracy conviction based on a variance between the indictment and the proof. Petitioner cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to her on direct appeal. *See, e.g., DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996). "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *United States v. Brown,* No. 94-5917, 1995 WL

---

[9] Petitioner proceeded to trial on the Third Superseding Indictment [Doc. 103], entered on November 11, 2011.

465902, at *1 (6th Cir. Aug. 4, 1995) (citations omitted), *cert. denied,* 516 U.S. 942 (1995). Because the claim asserted in Petitioner's § 2255 motion is substantively identical to one of the issues that Petitioner presented in her direct appeal following conviction, and because no exceptional circumstances exist in this action, the Court finds Petitioner's claim of ineffective assistance of counsel for failure to challenge the purported variance between the indictment and proof presented at trial to be without merit.

Lastly, Petitioner argues that her counsel provided ineffective assistance because he "failed to challenge the requirement that co-conspirator Wright should have gone to trial and the co-conspirator's guilt or innonce [sic] be determined prior to the defendant's sentencing hearing" [Doc. 303 p. 4]. Petitioner's claim with regard to the alleged failure of her counsel to challenge the "requirement" that co-conspirator Wright go to trial and be convicted as a prerequisite to her conviction is intertwined with the claim she raised above regarding counsel's failure to investigate the legitimacy of the conspiracy charge. As discussed above, her argument is premised upon an incorrect understanding of conspiracy law, and there is no "requirement" that Wright be tried and convicted before Petitioner was sentenced. Petitioner's attorney did not render ineffective assistance of counsel by failing to attempt a challenge in this regard. *See Hanley*, 906 F.2d at 1121. Accordingly, Petitioner's claim is without merit.

## B. Sufficiency of the Evidence

Petitioner attempts to challenge the sufficiency of evidence for convictions on Counts One and Two [Doc. 303 p. 9] and for convictions of money laundering and structuring [Doc. 303 p. 10]. Petitioner argues that the Government failed to provide evidence of intent on her part to illegally distribute drugs [Doc. 303 p. 9] and that because of the insufficiency of the

evidence to support Counts One and Two, the "money laundering and structuring counts fail" [Doc. 303 p. 10]. In addition to arguing the failure of the convictions due to their nexus with Counts One and Two, Petitioner attempts to directly attack the sufficiency of the evidence that supported her convictions for money laundering [Doc. 303-1, p. 66] and structuring [Doc. 303-1 p. 68]. Petitioner admits these claims were raised on direct appeal, but notes without explanation that they were "partially" raised [Doc. 303 p. 10].

As maintained by the Government, the Court agrees that these claims of Petitioner are not properly before the Court. "[A]n issue challenging the sufficiency of the evidence may only be raised on direct appeal; it is not cognizable in a § 2255 motion." *Kimbro v. United States*, No. 94-3446, 1994 WL 532935, at *2 (6th Cir. Sept. 30, 1994) (citing *United States v. Osborn,* 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc), *cert. denied,* 396 U.S. 1015 (1970)). Here, Petitioner raised these issues on appeal, and the Sixth Circuit specifically found that the evidence "amply established her guilt." *Guzman,* 571 F. App'x at 363. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996) (citations omitted). Since these issues were raised and answered on direct appeal, and Petitioner has not identified any highly exceptional circumstances, Petitioner is not entitled to relitigate these issues in a § 2255 motion.

### C.    Trial Court Errors and Ineffective Assistance of Counsel in Failing to Raise Issues

Petitioner's final arguments in her original § 2255 motion are based upon allegations of errors made by the Court, and she interlinks claims of ineffective assistance of counsel in failing to properly raise or pursue the errors. Petitioner claims that the Court erred in (1)

calculating drug quantities to determine offense level [Doc. 303 p. 8]; (2) applying leadership enhancement [Doc. 303 p. 11]; (3) establishing amounts for forfeiture [Doc. 303 p. 12]; and (4) applying version 2012 of the Sentencing Guidelines [Doc. 303 p.13].

### 1.     Calculation of Drug Quantities to Determine Offense Level

In further regard to the MPM files discussed in Section II.A.1 above, Petitioner claims that her counsel had not "prepared effectively to enable him to refute the spreadsheet and the drug quantity used in sentencing" [Doc. 303 p. 8].  Although not entirely clear, it appears Petitioner argues that her counsel afforded ineffective assistance with regard to a sentencing error.  While making no specific allegation that such sentencing error occurred, Petitioner asserts, "One of the key issues in all of this is using only 60 files and extrapolating from that small number to a number more than 30 times that amount to be representative of the entire MPM patient list" [Doc. 303-1 p. 52].  She generally claims it was improper to extrapolate assumptions regarding files that were not seized from information contained in files that were seized, citing *United States v. Chube*, 538 F.3d 693 (7th Cir. 2009) in support of this proposition.  In response, the Government argues that Petitioner's reliance upon *Chube* is misplaced and that Sixth Circuit precedent plainly allows a district court to draw reasonable inferences from the evidence presented at trial, including evidence of drug quantities, citing *United States v. Leah*, 75 F.3d 219, 229 (6th Cir. 1996), *abrogated on other grounds by United States v. Ellerbee*, 73 F.3d 105, 107 (6th Cir. 1996) [Doc. 320 p. 23].  The Government further argues that to the extent the Petitioner's challenge is to the propriety of her sentence, it is procedurally defaulted and unreviewable [Doc. 320 pp. 25–28].

As an initial matter, and as raised by the Government, the Court notes that this claim could have been but was not raised on direct appeal, and therefore is procedurally defaulted. *See United States v. Frady,* 456 U.S. 152, 167–68 (1982) (holding that when a § 2255 movant could have raised a claim at trial or on direct appeal but did not, § 2255 relief on that claim is deemed procedurally defaulted and may not be reviewed absent a showing of "cause" to excuse the default and "actual prejudice" resulting therefrom).

Regardless of the procedural default, Petitioner's claim still fails. Petitioner has not even attempted a "cause and prejudice" showing or actual innocence showing, but rather, her statements have confirmed her guilt. As noted in the Government's response, in Petitioner's efforts to prove that Wright was more culpable than her, Petitioner admits some of the crucial facts that established her guilt [Doc. 320 p. 24]. Moreover, the record in this case reflects that the issue of drug amounts involved in the conspiracy related to calculation of the offense level was fully argued by counsel and considered by the Court as Objection 11 to the presentence report [Doc. 291 pp. 92–95]. The Court determined that "the method utilized was a conservative estimate of the amount of prescription narcotics involved in the conspiracy" [*Id*. at 93–94]. The Court noted that "the Sixth Circuit has held that if the precise amount of drugs involved is uncertain, an estimate will suffice so long as such estimate errs on the side of caution and likely underestimates the quantity of drugs attributable to the Defendant" [*Id*. at 93], and found that the drug amount was sufficiently more than the "requisite to impose an offense level of 38" [*Id*. at 94–95]. Because the Court holds that Petitioner's offense level was calculated correctly, there is no basis to support a finding of ineffective assistance of counsel in this regard. Without first demonstrating error, Petitioner cannot satisfy the *Strickland* test.

Further, since Petitioner failed to raise this issue on direct appeal, and has not demonstrated either "cause" and actual "prejudice," or that she is actually innocent, her claims cannot be reviewed in this collateral proceeding. *Bousley v. United States,* 523 U.S. 614, 621–22 (1998).

### 2.    Leadership Role Enhancement

Petitioner argues that the Court erred in applying the leadership role enhancement and that her counsel failed to raise the issue [Doc. 303 p. 11]. Petitioner's argument is based on her assertion that coconspirator Wright was actually "the person in charge of the policies, practices and procedures for MPM." *Id.* The Government responds that Petitioner has procedurally defaulted this claim for not having raised it on direct appeal [Doc. 320 p. 25], but nonetheless states that applying an enhancement based upon Petitioner's leadership role was appropriate citing evidence presented at trial [Doc. 320 p. 26].

The Court agrees that Petitioner has procedurally defaulted her challenge to the leadership role enhancement by failing to raise it on direct appeal. But, as discussed with regard to the drug quantity calculation, Petitioner's claim still fails regardless of the default. The Court finds that the application of the leadership role enhancement was appropriate, and thus, absent error, there is no basis to support a finding of ineffective assistance of counsel in this regard. Petitioner failed to raise this issue on direct appeal, and has not demonstrated either "cause" and "actual prejudice," or that she is actually innocent, so her claim cannot be reviewed in this collateral proceeding. *Bousley*, 523 U.S. at 621–22.

### 3.    Forfeiture

With respect to forfeiture issues, Petitioner makes several arguments, including error by the Court in "establishing the amounts for forfeiture" and that "[t]he same dollar was

charged against the defendant as much as three times" [Doc. 303 p. 12]. In addition, Petitioner alleges counsel provided ineffective assistance in failing to challenge these issues. The Government responded in opposition stating that Petitioner's claims, even if well-taken, would not be subject to review through a § 2255 petition. [Doc. 320 p. 29].

As an initial matter, the Court notes that Petitioner's claims regarding improper forfeiture are not properly before the Court. "A § 2255 petition may not be used to challenge penalties merely collateral to imprisonment, such as fines and forfeiture of property." *McGee v. United States,* No. 1:08-CV-499, 2010 WL 310770, at *1 (W.D. Mich. Jan. 21, 2010). Forfeiture is not a sufficient restraint on liberty to meet the requirements for habeas corpus relief. *See McShepard v. Shewalter*, No. 1:09-CV-2042, 2010 WL 5887798, at *18 (N.D. Ohio Dec. 23, 2010), *report and recommendation adopted,* No. 1:09-CV-2042, 2011 WL 767726 (N.D. Ohio Feb. 28, 2011).

With respect to Petitioner's claim of ineffective assistance of counsel in failing to raise the forfeiture issues, the Court finds the claim to be without merit. As the Government points out, the scope of the forfeitures that were triggered by Petitioner's offenses varied according to the applicable statutory bases [Doc. 320 p. 29]. Petitioner's generalized assertions of error are based on a misunderstanding of forfeiture, and because the Court rejects her claims, counsel did not deficiently perform by not raising the meritless claims. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments.").

### 4.    Challenge to 2012 Version of the Sentencing Guidelines

Petitioner further faults her counsel for not challenging the use of the 2012 Sentencing Guidelines instead of the 2009 Sentencing Guidelines, and thus, claims a violation of the Ex Post Facto Clause [Doc. 303 p. 13]. As with Petitioner's purported challenge to the drug quantity used for sentencing and the application of the leadership role enhancement, the Court notes initially that this claim is also procedurally defaulted. Petitioner likewise failed to raise this issue on direct appeal, and does not make the required showing either that (1) she had good cause for not raising it earlier and would suffer "actual prejudice" if it were not reviewed, or (2) she is actually innocent. *Bousley*, 523 U.S. at 621–22. As noted by the Government, it was appropriate to use the 2012 version since Petitioner was sentenced in that same year. *See* U.S.S.G. §1B1.11(a) ("[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced"). A defendant may only be sentenced under an earlier version of the Sentencing Guidelines if use of the current version would yield a higher sentencing range than the version in place at the time of the offense. *See* U.S.S.G. §1B1.11, Application Note 2; *Peugh v. United States,* 569 U.S. 530, 533 (2013).

Regardless of the procedural default, and because the Court holds that the application of the 2012 version of the Sentencing Guidelines was correct, the decision of Petitioner's counsel not to object to the use of the 2012 version at sentencing or to raise the challenge on appeal was not in error. Without first demonstrating error, the Petitioner cannot satisfy the *Strickland* test. *Rhodes v. United States,* 443 F. Supp. 2d 893, 901 (N.D. Ohio 2006). Accordingly, Petitioner's claims of ineffective assistance of counsel in this regard are without merit.

## III.    TIMELINESS OF ADDENDUM AND AMENDMENT

Having addressed the claims Petitioner raised in her original § 2255 petition, the Court now turns its attention to Petitioner's Addendum to the § 2255 petition that was filed on October 22, 2015 [Doc. 325], and Plaintiff's Motion to Amend that was filed on April 11, 2016 [Doc. 329].  In both the Addendum and the Motion to Amend, Petitioner raises new claims that are unrelated to those set forth in her original § 2255 petition.

A § 2255 motion is subject to a one-year statute of limitations.  28 U.S.C. § 2255(f).  This same provision governs the timeliness of later-filed amendments.  *Cameron v. United States*, No. 1:05-cv-264, 2012 WL 1150490, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. 2001)).  If the amendment is not timely filed, the Court looks to equitable tolling rules and Rule 15 of the Federal Rules of Civil Procedure in reaching its decision regarding the timeliness of the proposed amendment. *Mayle v. Felix,* 545 U.S. 644, 656–57 (2005).  Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and the amended pleadings "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired."  *United States v. Clark,* 637 F. App'x 206, 209 (6th Cir. 2016) (citing *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)).

### A.    Applicable Statute of Limitations for Addendum and Amendment

Petitioner had one year from the time her judgment of conviction became final to file a § 2255 motion.  Since Petitioner took an unsuccessful direct appeal from her judgment of conviction, and did not seek certiorari, the judgment became final for postconviction relief

purposes when the time expired for filing a petition for certiorari contesting the appellate court's affirmation of the conviction—or ninety days after entry of judgment by the Court of Appeals. *Clay v. United States,* 537 U.S. 522, 527 (2003). Here, the Court of Appeals entered judgment on July 2, 2014 [Doc. 299], and Petitioner was required to timely file any claims pursuant to § 2255 no later than September 30, 2015.

Petitioner's original § 2255 motion was timely filed on February 2, 2015 [Doc. 303]. However, Petitioner's addendum to her § 2255 motion [Doc. 325] raising a new claim was filed on October 22, 2015, after the applicable one-year statute of limitations expired. In addition, Plaintiff's Motion to Amend [Doc. 329], which also raises new claims, was filed on April 11, 2016, also beyond the applicable one-year statute of limitations.

### B. Relation Back Under Federal Rule of Civil Procedure 15(c)

Petitioner's addendum does not escape the statute of limitations by "relating back" to the claims in her original § 2255 motion because her addendum attempts to raise an entirely new argument that does not relate back to the claims in her timely filed original § 2255 motion. *See Olsen v. United States,* No. 00-1938, 2001 WL 1631828, at *3 (6th Cir. Dec. 14, 2001). When an amendment is untimely, the Court looks to Federal Rule of Civil Procedure 15(c) to determine whether the proposed claim "relate[s] back" to a timely, original pleading and is thus saved from being time barred by expiration of the statute of limitations. *Mayle*, 545 U.S. at 656–57. The amended claim relates back if it arises out of "the [same] conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has rejected a broad reading of "conduct, transaction, or occurrence" in the context of post-conviction relief and explained an amended petition will not

relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those [set forth in] the original pleading." *Mayle,* 545 U.S. at 650. It is insufficient—and a claim is time-barred—if the new claim merely arises from the same trial, conviction, or sentence. *Id.* at 662.

In Petitioner's original § 2255 motion, she alleged three general grounds of collateral attack: ineffective assistance of counsel, sufficiency of evidence, and trial court errors. In her Addendum, Petitioner attempts to add a purported defensive claim that "the offenses such as the defendant has been charged with from 2008 to 2010 were not against Tennessee law at the time they were alleged to have been committed" [Doc. 325 p. 5]. Petitioner's proposed claim relating to the State of Tennessee's regulatory laws cannot be characterized as relating to a pre-existing, timely collateral challenge to her federal conviction. As noted by the Government, Tennessee's regulatory scheme is wholly irrelevant to Petitioner's subject conviction [Doc. 337 p. 3], and accordingly Petitioner's addendum is time-barred.

Similarly, the claims Petitioner attempts to raise in her untimely Motion to Amend likewise fail to relate back to the claims in her original § 2255 motion. In the Motion to Amend, Petitioner alleges two new claims ostensibly based on *Lius v. United States*, 136 S. Ct. 1083 (2016) [Doc. 329]. Petitioner claims "(1) ineffective assistance of counsel where counsel failed [sic] to assist Guzman in obtaining untainted assets so she could retain counsel of choice; and (2) the Government violated Guzman's Sixth Amendment where they retained untainted assets depriving Guzman of counsel of choice—a structural error in the proceeding" [Doc. 329 p. 1]. The Government responds that Petitioner's claims are wholly unrelated to her original § 2255 motion, and that they are meritless because "*Luis* was decided after her

26

judgment became final and is not retroactively applicable to cases on collateral review" [Doc. 337 p. 6].

The Court finds that Petitioner's claims raised in her Motion to Amend must fail in several respects. First, Petitioner's claims center on claims of untainted assets that she alleges the Government improperly retained and that defense counsel should have helped her to obtain in order to afford hiring counsel of her choice. As noted above, Petitioner's Motion to Amend was untimely filed, and the new claims asserted therein do not relate back to any claims in her original § 2255 petition. The only forfeiture claims mentioned in the original petition are those discussed in Section II.C.3 above and determined to be improperly before the Court, and as such, there can be no relation back to a valid claim. Further, as the Government correctly notes, *Luis* provides no support for Petitioner's arguments. In that case, the Supreme Court held that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Lius*, 136 S. Ct. at 1088. But here, Petitioner has not alleged that she had any untainted pretrial assets to be retained, and in fact swore in her financial affidavit at the outset of her case that she did not have sufficient assets to afford counsel [Doc. 17]. Finally, even if Petitioner were to have made a sufficient claim that she had legitimate, untainted assets, Petitioner has not established that *Luis* has been made retroactively applicable to cases on collateral review. *In re Mazzio*, 756 F.3d 487, 489–90 (6th Cir. 2014) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive.") (quoting *Tyler v Cain*, 533 U.S. 656, 663 (2001)). Accordingly, Petitioner's Motion to Amend is found to be untimely and without merit.

## IV.    CONCLUSION

The Court finds that Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255, and her motion to vacate, set aside or correct sentence [Doc. 303], Addendum [Doc. 325], and Motion to Amend [Doc. 329] will be **DENIED** and this action will be **DISMISSED**.   A hearing is unnecessary in this case.   The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.   Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.   *See* Fed. R. App. Proc. 24. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE.**   28 U.S.C. § 2253; Fed. R. Ap. Proc. Rule 22(b).   A Judgment will enter **DENYING** the Motion [Doc. 303] and related Addendum [Doc. 325] and Motion to Amend [Doc. 329].

IT IS SO ORDERED.

s/ Thomas A. **Varlan**
CHIEF UNITED STATES DISTRICT JUDGE